UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA,                )<br>                                                              )<br>         Plaintiff,                                      )<br>                                                              )<br>v.                                                          )<br>                                                              )<br>ROBERT CLAY WIGGINTON, JR.,       )<br>                                                              )<br>         Defendant.                                  ) | Criminal No. 6:15-cr-5-GFVT-HAI-1<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

*** *** *** ***

Defendant Robert Clay Wigginton, Jr., charged with bank robbery pursuant to 18 U.S.C. § 2113(a), has filed a motion to suppress evidence at his upcoming trial. In the motion to suppress and supplemental briefing, Wigginton presents several alleged grounds for constitutional violations of his Fourth Amendment right against unreasonable searches and seizures and his Fifth Amendment right against self-incrimination. Consistent with local practice, this matter was referred to Magistrate Judge Hanly A. Ingram for a recommended disposition. Judge Ingram held a suppression hearing and arranged for extensive briefing of the issues by both parties. After thoroughly investigating Wigginton's claims, Judge Ingram recommended the Court deny Wigginton's motion to suppress in its entirety. For the reasons set forth below, the Court will OVERRULE Defendant's objections to Judge Ingram's Order.

**I**

**A**

The full factual background of this case is recounted in detail several times throughout the record. [*See, e.g.,* R. 52; R. 53; R. 54.] Accordingly, the Court focuses its factual summary

on those facts that most pertain to Defendant Wigginton's specific objections to the Magistrate's Recommended Disposition. The Court hereby incorporates by reference the full factual background as set forth in the Recommended Disposition. [R. 53 at 2-6.] The facts that are most relevant to the Defendant's objections are summarized as follows.

The Wright-Patt Credit Union ("WPCU") in Englewood, Ohio, was robbed on December 5, 2014. [R. 50 at 8-9.] Following the robbery, local law enforcement determined that Defendant Robert Wigginton, a member of the WPCU, was a suspect. [*Id.* at 10, 14, 18-20.] Law enforcement began to communicate with the Englewood WPCU's bank fraud investigator, Renee Gildenberger. Ms. Gildenberger gave law enforcement information about Wigginton's debit card and deposit activity; for example, Ms. Gildenberger verified that Wigginton had paid for a room at "a hotel . . . approximately five miles from the banking center" around the time that the robbery occurred, and that he used his debit card "at another hotel in the Dayton area . . . two hours after [the December 5] robbery. [*Id.* at 14-15, 37.] Englewood Police Department Detective Alan Meade testified that he never sought a subpoena or a search warrant to obtain this banking information from Ms. Gildenberger. [*Id.* at 19.] Nonetheless, Detective Meade testified that he told Gildenberger that "[Defendant] is up to something" and to "keep an eye on the account and let me know if you see anything unusual." [*Id.* at 20.]

Several days later, Ms. Gildenberger contacted Meade to inform him that a transaction on Defendant Wigginton's debit card had been approved at a Red Roof Inn in London, Kentucky. [*Id.*] Meade contacted London police to notify them of a robbery suspect in their area. [*Id.* at 22-23.] On December 17, 2014, the Community Trust Bank in London was robbed, with circumstantial evidence identifying Wigginton as a suspect. [*Id.* at 36; R. 52-2 at 4-6.] London Police Detective Joe Smith began to communicate with Englewood Detective Meade, and Meade

2

put Smith in direct contact with Gildenberger at the WPCU. [R. 50 at 24.] London police then obtained Wigginton's cell phone number from Gildenberger and the WPCU, and subsequently contacted AT&T to obtain further information about Wigginton's cell phone use. [*Id.*; R. 52-2 at 5.]

Law enforcement obtained a Kentucky state arrest warrant for Wigginton. [R. 52-3.] Because London law enforcement now suspected Wigginton was in the Atlanta, Georgia, area, they notified Special Agent Timothy James Burke of the FBI law and crimes squad in Atlanta. [*Id.* at 40, 42.] Law enforcement used Wigginton's debit card transactions as well as "some teletechniques" related to Wigginton's cell phone number to pinpoint Wigginton's real-time location in Atlanta. [R. 50 at 66.] The police report indicates that, at approximately 6:57 p.m. on December 17, 2014, "a cell phone registered to [Defendant] shows its location in Atlanta, Georgia near Atlanta Mariott [sic] Marquis" and that at approximately 6:58 p.m. "a charge of 148.48 shows to [Defendant's] card at Atlanta Marriott Marquis." [R. 52-2 at 6.] FBI Agent Burke and his team were able to verify with the Marriott Marquis hotel's security that Wigginton was staying there, and they subsequently arrested Wigginton in his hotel room on the morning of December 18, 2014. [R. 50 at 43-44.]

**B**

Pursuant to Federal Rule of Criminal Procedure 59(b) and 28 U.S.C. § 636(b)(1), any party may serve and file specific written objections to a Magistrate Judge's Recommended Disposition within fourteen days of being served with the Recommended Disposition. In order to receive *de novo* review by this Court, any objection to the Recommended Disposition must be specific. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986); *see also* Fed. R. Crim. Pro. 59(b)(3). A specific objection "explain[s] and cite[s] specific portions of the report which

3

[counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007). A general objection that fails to identify specific factual or legal issues from the Recommendation, however, is not permitted, since it duplicates the Magistrate's efforts and wastes judicial economy. *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991).

In his initial motion to suppress and the supplemental briefing, Defendant Wigginton sets forth seven grounds supporting suppression. In short, the first four grounds concern the bank account and cell phone information utilized by the Government to track his real-time location. Wigginton alleges a violation of the Fourth Amendment of the Constitution, as well as statutory violations of the Right to Financial Privacy Act, 21 U.S.C. §§ 3401-3422; and the Stored Communications Act, 18 U.S.C. §§ 2701-2712. The final three grounds of the motion to suppress concern alleged Fifth Amendment violations. Defendant argues that his confession was involuntary because he was under the influence of alcohol and Xanax at the time he gave it. He claims he was subjected to a custodial interrogation before being given proper *Miranda* warnings. Finally, he questions the validity of his *Miranda* waiver on the basis that he was intoxicated and, thus, could not waive his rights knowingly and intelligently.

Defendant Wigginton, through counsel, has stated several specific objections that relate to the first four grounds of the motion to suppress and the alleged Fourth Amendment violation. These objections are sufficiently specific to trigger the Court's obligation to conduct a *de novo* review. *See* U.S.C. § 636(b)(1)(c). The Court has satisfied that duty, reviewing the entire record, including the pleadings, the parties' arguments, relevant case law and statutory authority, as well as applicable procedural rules. For the following reasons, Wigginton's objections will be OVERRULED and his motion to suppress evidence will be DENIED.

II

A

In the Recommended Disposition, Judge Ingram finds that the Government's use of Wigginton's Wright-Patt Credit Union bank account information and cell phone site location data did not violate Wigginton's Fourth Amendment right to be free from unreasonable searches and seizures. Wigginton objects to the Magistrate Judge's conclusion on several bases. In large part, Wigginton argues that the Magistrate failed to account for the unique nature of debit card transactions, and he asserts that his situation is distinct from prior case law where hard-copy bank account information was incapable of providing law enforcement with an individual's "real-time" location. Wigginton asserts a reasonable expectation of privacy in the information disclosed by WPCU employees. Further, Wigginton objects to certain factual findings made by the Magistrate Judge, such as the length of time Wigginton was monitored as well as whether or not Wigginton was digitally tracked within a constitutionally protected space.

The Court begins with Wigginton's primary argument: that Judge Ingram "failed to address the unique nature of the debit card transmissions disclosed by WPCU to law enforcement." [R. 54 at 12.] Wigginton takes issue with the Magistrate's reliance on the often-cited Supreme Court decision *United States v. Miller* and attempts to distinguish his situation from that case. 425 U.S. 435 (1976). In *Miller*, a criminal defendant sought to suppress hard copies of checks and other bank account records that were obtained without a warrant or a proper subpoena. The defendant argued that the personal information he made available to his banks was available only "for a limited purpose" and that he had a reasonable expectation of privacy in the information. *Id.* at 442. The Supreme Court disagreed, holding that the financial evidence should not be suppressed. *Id.* According to the Court, no legitimate expectation of privacy

5

existed in the documents because they contained "only information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business." *Id.* The Court articulated what has come to be known as the "third-party doctrine" as follows:

> The depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government. This Court has repeatedly held that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed.

*Id.* at 443 (internal citations omitted).

Wigginton argues his situation is distinct from *Miller*, because *Miller* concerned hard copies of checks, deposit slips, and the like, none of which were able to convey the defendant's real-time location. Wigginton states that the electronic transmissions created by his debit card "routinely provide contact and location information instantaneously" [R. 54 at 13] so to create the kind of "precise, comprehensive record" forbidden by *United States v. Jones*, 132 S. Ct. 945, 955 (2012) (Sotomayor, J., concurring). Besides the *Jones* case, Wigginton offers no legal authority for his argument.

The Court finds that *United States v. Miller* is applicable here, despite the digitalization of banking that has occurred since that case was decided. The information obtained warrantlessly from the WPCU contained essentially the same content as the information obtained warrantlessly in *Miller*; the fact that a digital record of a debit card purchase can pinpoint an individual's location does not change the fact that the debit card purchase information was voluntarily conveyed from the individual to the bank. Sixth Circuit precedent guides the Court's determination. In *United States v. Skinner*, the Sixth Circuit considered a defendant's expectation of privacy in the location data broadcast from his cellular phone. 690 F.3d 772 (6th

Cir. 2012). Though the *Skinner* court did not address debit transactions *per se*, the court made clear that the Fourth Amendment does not protect electronic data serving "simply as a proxy for [a defendant's] visually observable location." *Id.* at 779 (citing *United States v. Forest*, 355 F.3d 942, 951-52 (6th Cir. 2004)). The records created by the Defendant's debit card use served as a proxy for his physical location in this case. By using his debit card at a particular restaurant, store, or hotel, Defendant voluntarily conveyed information about his location to his bank. The Court follows the reasoning of *Miller* and *Skinner* to conclude that there is no reasonable expectation of privacy in real-time location data—such as a debit card purchase—that an individual voluntarily conveys to his bank.[1]

To the extent Wigginton argues that WPCU officers and employees were acting as government agents, the Supreme Court has already determined the issue. "[E]ven if the banks could be said to have been acting solely as Government agents in transcribing the necessary information and complying [with the Government's request] . . . there would be no intrusion upon the depositors' Fourth Amendment rights." *Miller*, 425 U.S. at 443.

Further, the Court finds Wigginton's situation distinct from *Jones*, the case on which his argument fully hinges. In *United States v. Jones*, the Supreme Court found a Fourth Amendment violation where a GPS tracking device was attached to a vehicle and monitored by the Government for twenty-eight days. 132 S. Ct. 945 (2012). In that case, certain members of the

---

[1] In his objections, Wigginton faults the Magistrate Judge for failing to consider his subjective expectation of privacy in the WPCU information. A Fourth Amendment analysis does indeed involve a two-part inquiry. An individual must exhibit an "actual," subjective expectation of privacy, and that expectation of privacy must be "one that society is prepared to recognize as reasonable." *See, e.g., Bond v. United States*, 729 U.S. 334, 120 S. Ct. 1462, 1465 (2000); *United States v. King*, 227 F.3d 732, 743-44 (6th Cir. 2000). Both prongs must be satisfied to find a reasonable expectation of privacy. Where, as in this case, the law provides that society does not recognize as reasonable a certain expectation of privacy, the individual's subjective expectation becomes irrelevant. Accordingly, the Magistrate Judge did not err in focusing his analysis on the reasonableness element of the test.

Supreme Court did express concern over the possibility of extensive tracking via location data. *See, e.g.*, *id.* at 957 (Sotomayor, J., concurring).  Importantly, however, *Jones* involved a physical trespass, and the Court's conclusion ultimately rested on that point.  *See id.* at 949.  In that case, the Government secretly attached a tracking device to the defendant's car and subsequently monitored his movements in detail.  *Id.* at 948.  No such physical trespass occurred in the matter at hand.

The Sixth Circuit has distinguished a situation where the defendant obtained a cell phone and the phone itself included the GPS technology that was later used by law the Government to track his whereabouts.  *See Skinner*, 690 F.3d at 780.  The Court finds that Wigginton's situation, where he voluntarily obtained a debit card and a cell phone that both inherently allowed his location to be tracked in real-time, is similarly distinct from *Jones*.  As the Sixth Circuit articulated in *Skinner*, "[w]hen criminals use modern technological devices to carry out criminal acts and to reduce the possibility of detection, they can hardly complain when the police take advantage of the inherent characteristics of those very devices to catch them."  690 F.3d at 774.

Wigginton disputes some of the factual conclusions expressed in the Recommended Disposition.  For example, he argues that law enforcement's use of the information disclosed by WPCU and his cell phone location data "was not limited to a short window of time." [R. 54 at 15; *see also* R. 53 at 15.]  Instead, Wigginton asserts law enforcement conducted "precisely the kind of broad, prolonged surveillance that the Supreme Court has sought to protect against in *Jones* and its progeny." [R. 54 at 15.]  As stated above, however, this case differs from *Jones* in several key ways, including, perhaps primarily, the lack of a physical trespass.  132 S. Ct. at 948-49. Where the Government in *Jones* tracked the defendant via GPS for twenty-eight days, in this case, the Government used Wigginton's cell phone data to track him for less than twenty-four

8

hours. The WPCU provided law enforcement with information about his debit card transactions and deposits for a longer period of time—from the December 5 Englewood bank robbery until the December 18 arrest. This longer timeframe, however, does not change the analysis. As previously explained, that information was voluntarily conveyed by Wigginton to his bank, and under *Miller* and subsequent case law, the WPCU's disclosure to law enforcement did not violate the Fourth Amendment. Further, *Jones* does not prohibit law enforcement's use of tracking via location data altogether. In a concurrence joined by three other justices, Justice Alito explained that "relatively short-term monitoring of a person's movements on public streets accords with expectations of privacy that our society has recognized as reasonable. But the use of longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy." 132 S. Ct. at 964 (Alito, J., concurring).

Wigginton takes issue with the Magistrate Judge's conclusion that "agents did not track Mr. Wigginton within a constitutionally protected space" using cell phone site location information. [R. 54 at 15-16; R. 53 at 15.] Wigginton claims "it is highly unlikely that agents seeking to apprehend a fugitive bank robber ceased cell-site surveillance immediately after tracking Wigginton to a location 'near' the Marquis Marriott in Atlanta." [R. 54 at 16.] If police surveyed Wigginton *inside* his hotel room, he argues, his Fourth Amendment rights were likely violated. [*Id.*] *See also United States v. Lanier*, 636 F.3d 228, 232 (6th Cir. 2011) (explaining that a hotel room may be entitled to Fourth Amendment protection). However, Wigginton points to nothing in the record to prove agents monitored his activities within his hotel room or anywhere besides what is otherwise public space. He presents no facts or testimony to refute the police report's record that law enforcement merely used cell phone data to place him "near" the hotel [R. 52-2 at 6], or to contest FBI Agent Burke's testimony that law enforcement learned of

9

Wigginton's exact location within the hotel by talking with hotel security, rather than through data surveillance. [R. 50 at 43.] Based on the evidence in the record, the Court concludes, like the Magistrate Judge, that law enforcement did not track the Defendant within a constitutionally protected space.

Finally, to the extent Wigginton alleges violations of the Right to Financial Privacy Act, 21 U.S.C. §§ 3401-3422, and the Stored Communications Act, 18 U.S.C. §§ 2701-2712, Wigginton does not specifically address the Magistrate's analysis of either statute in his objections. Wigginton reiterates his belief that the Government's use of the WPCU information violated the Right to Financial Privacy Act [*see* R. 54 at 17], but he does not dispute any part of the legal analysis laid out in the Recommended Disposition. The Court agrees with the Magistrate Judge's conclusion that neither the Right to Financial Privacy Act nor the Stored Communications Act provide for suppression of evidence as a remedy for a statutory violation. Accordingly, the Court adopts the Magistrate's Recommended Disposition as to those two arguments. [R. 53 at 10-11, 16-17.]

Overall, upon *de novo* review, the Court finds no violation of Wigginton's Fourth Amendment rights and, thus, no basis to grant his motion to suppress. Though the Supreme Court expresses concern over prolonged tracking of an individual's real-time location in *Jones*, *Jones* is not directly applicable to Defendant's situation. And although the nature of banking information has changed with the world's increasing digitalization, the Supreme Court's articulation of the third-party doctrine in *Miller* still stands.

**B**

The Court now turns to the Fifth Amendment claims. Wigginton does not discuss his Fifth Amendment arguments or the Recommended Disposition's analysis of those arguments in

10

his objections. [R. 54.] Instead, Wigginton focuses his objections on the Fourth Amendment issues and, as to the Fifth Amendment arguments, states:

> Although not discussed at length in this filing, Wigginton specifically requests that the Court review the Magistrate Court's ruling as to the admissibility of statements made during custodial interrogation before law enforcement provided Wigginton with Miranda warnings.

[*Id.* at 22.] In addition, the opening paragraph of the objections' argument section reads:

> Because Mr. Wigginton requests de novo review of the Magistrate Court's recommended disposition, he first incorporates by reference all arguments advanced in the memorandum previously filed in support of his motion to suppress. . . . More specifically, Wigginton objects to the Court's recommended disposition as to all issues for the reasons discussed in his earlier memorandum.

[*Id.* at 12.] This pleading is insufficient to trigger the Court's obligation to conduct a *de novo* review with regard to the three Fifth Amendment grounds for suppression.

28 U.S.C. § 636(b)(1) provides for *de novo* review only of those portions of a Magistrate's report or recommendations to which objections have been made. In *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991), the Sixth Circuit, discussed the failure to provide specific objections to a Magistrate's report:

> A general objection to the entirety of the magistrate's report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources . . . and runs contrary to the purposes of the Magistrates Act. We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of error. We should not permit appellants to do the same to the district court reviewing the magistrate's report.

*Howard*, 932 F.2d at 509. In other words, the filing of vague or objections does not meet the requirement of specific objections and is tantamount to a complete failure to object. *See Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *see also Cole v. Yukins*, 7 Fed. App'x 354, 356 (6th

11

Cir. 2001).

Indeed, a general objecting statement, even if it incorporates all previous arguments, does not suffice. In *Mira v. Marshall*, the Petitioner made a blanket objection to the Magistrate's report and recommendation by stating: "The undersigned objects to each and every finding of the Magistrate and requests that the court conduct a *de novo* review of the record." 806 F.2d at 637. Concluding that the Petitioner's general objection was insufficient, the Sixth Circuit held that a district court need not provide *de novo* review where the objections are "[f]rivolous, conclusive or general." *Id.* at 637 (internal citations omitted). The appellate court further noted that parties have "the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Id.* at 637 (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982)).

In this case, Wigginton failed to specifically object to the Magistrate Judge's Recommended Disposition for the Fifth Amendment claims. For his Fourth Amendment arguments, he directed the Court to particular portions of the Recommended Disposition, provided counter-arguments, and interpreted case law. By contrast, for his Fifth Amendment arguments, he simply offered the Court a blanket objection to the final eight pages of the Recommended Disposition. Although he uses the word "specifically," he does not direct the Court to any discrete issues but rather expresses his willingness to reiterate the entire argument of his earlier memorandum. This does not trigger the Court's obligation to conduct a *de novo* review. *See Lockert v. Faulkner*, 843 F.2d 1015, 1019 (7th Cir. 1988) ("Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review.").

In light of the general objection, the Court has reviewed the Magistrate Judge's Recommended Disposition as to the three Fifth Amendment issues for clear error. The Court finds no clear error in the recommendation. Judge Ingram conducted a thorough review of the record, heard all of the testimony at the evidentiary hearing, watched the video of the Defendant's interview, and presented a thoughtful and appropriate analysis of the facts and the applicable law in the Recommended Disposition. Finding no clear error, the Court accepts the Magistrate's conclusions and finds the three Fifth Amendment grounds presented by Wigginton do not warrant the suppression of any evidence in his case.

### III

In conclusion, the Court has conducted a *de novo* review as to Wigginton's specific objections and has reviewed the Recommended Disposition for clear error as to Wigginton's general objections. After careful thought, the Court determines that neither Wigginton's Fourth Amendment arguments nor his Fifth Amendment arguments are appropriate grounds for the suppression of evidence. The Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant Wigginton's objections to the Magistrate Judge's Recommended Disposition [R. 54] are **OVERRULED**;

2. Wigginton's Motion to Suppress Evidence [R. 28] is appropriately **DENIED**; and

3. The Court hereby **INCORPORATES** by reference Judge Ingram's Recommended Disposition [R. 53] as and for the opinion of the Court.

This 10th day of December, 2015.

Gregory F. Van Tatenhove
United States District Judge